## HUMFREY v. BANK OF ALASKA.

(First Division.    Juneau.    April 5, 1921.)

No. 1825–A.

Assignments ⬥⟹49—Banks and Banking ⬥⟹140(6)—Negotiable Instruments—Checks.

> The Craig Lumber Company drew its check in favor of the plaintiff on the defendant bank, having at the time a sufficient deposit in bank subject to check, to pay it. Before the check was presented for payment the lumber company had gone into bankruptcy, whereupon the bank set off. the deposit of the lumber company against an indebtedness due from the lumber company to the bank. On suit by the payee of the check against the bank to recover the amount of the check, *held*, the bank was not liable to the payee of the check, because there was no privity of contract between the payor and the bank. The giving of the check was not an assignment to the ·payee of the sum named in the· check, and the bank was not liable thereon until it had accepted it.

On December 4, 1918, the Craig Lumber Company, by Henry Shattuck, its president, deposited with the Seattle National Bank the sum of $8,000 to the credit of the Bank of Alaska at Wrangell, Alaska; and on the 5th day of December of the same year it wired the Bank of Alaska as follows:

"Have deposited Seattle National your credit eight thousand all of which for October and November pay rolls. Have wired Humfrey use entire amount."

On December 6th the said· Bank of Alaska wired to Humfrey as follows:

"Please advise me if entire eight thousand will be needed for pay roll."

⬥⟹See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On said date said Humfrey replied by wire as follows:

"Have allowed enough of eight thousand credit cover overdraft and all outstanding checks."

Plaintiff was the owner and holder of a certain check for $250 issued by the Craig Lumber Company on the said Bank of Alaska, being for personal services—i. e., pay roll account. Before the check was presented the Craig Lumber Company had gone into bankruptcy. The bank refused to pay said check, and claimed the right to set off the entire $8,000 deposit against an indebtedness due from the Craig Lumber Company to the bank. Whereupon the owner of the check brought suit against the bank.

H. L. Faulkner, of Juneau, for plaintiff.
John B. Marshall, of Juneau, for defendant.

JENNINGS, District Judge. Two questions are presented: (1) Can the deposit be considered as a special deposit? (2) If so, can the holder of the check sue for its nonpayment?

While this is not, strictly speaking, a special deposit, yet it is, I think, a deposit for special purposes. The contract for special deposit, like—

"all contracts, grows out of the mutual intention and understanding of the parties. The purpose and terms of the deposit may be explicitly stated, or the intentions of the parties may be inferred from their declarations considered in connection with their conduct and all the circumstances." 3 R. C. L., p. 517, § 146, text to note 14.

What are the circumstances in this case? The habitat of the Bank of Alaska is at Wrangell. The deposit was with an agent at Seattle of said bank. Shattuck, manager of the depositor, wired to Wrangell notice of the special purpose for which the deposit was made. It is true that such wire was not sent until the day after the deposit, but the fact remains that it was sent and received before the bank at Wrangell had set off against indebtedness to it any part of said deposit. This is evidenced by the absence of any dissent from the "specialness" of the deposit. There is a total absence of any claim of set-off by the Alaska bank. Indeed more, the Alaska bank wires to find out if the entire amount of the deposit will be required for pay roll purposes and are informed by Humfrey that he has allowed enough of the $8,000 credit

to cover overdrafts and all outstanding checks. I do not think any one can read the telegrams without coming to the conclusion that the bank understood that this was a special deposit to meet pay roll.

This, then, being a deposit for a special purpose, the relation between the depositor and the bank was not that of merely debtor and creditor; rather, it was the relation of principal and agent. The Craig Lumber Company is the principal; the Bank of Alaska is the agent. Agent for what? To liquidate the pay roll for the principal when checks are presented by those to whom the principal owes the pay roll. The Bank of Alaska fails to keep its contract of agency and appropriates the deposit to its own use. For so doing the bank would certainly be liable to the Craig Lumber Company, or perhaps to its trustee in bankruptcy, but I cannot see that it is liable to the payee of the check, because there is no privity of contract between the payee of the check' and the bank. The giving of the check was not an assignment to the payee of the sum named in the check. It is useless to cite authorities on this proposition. They are well-nigh unanimous, although it must be admitted that there are some authorities to the contrary, but, however the authorities may be, the matter is regulated by statute in this jurisdiction.

"A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check." Session Laws 1913, § 185, p. 194.

"A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts it." Id. § 127, p. 184.

"The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee." Id. § 132, p. 185.

Findings and judgment for the defendant.